```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **J.D., L.E., AND R.A., MINORS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9755** |
| **C. RAY NAGIN, ET AL** | **SECTION B(4)** |

### ORDER AND REASONS

Before the Court is Defendants C. Ray Nagin and Ozzie Williams' Motion to Dismiss (Rec. Doc. No. 44). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Motion is **DENIED**.

### *BACKGROUND*

The Youth Study Center ["the Center"] is located in New Orleans, Louisiana and acts as a pretrial detention facility for minors accused of offenses. Plaintiffs filed suit on December 21, 2007 on behalf of all minors who are now or in the future will be confined at the Center. Plaintiffs allege that the conditions at the Center violate the minors' rights under the Constitution and laws of the United States.

Plaintiffs named as Defendants: (1) C. Ray Nagin, the Mayor of New Orleans, (2) Richard Winder, Director of the Department of

1

Human Services for the City of New Orleans, (3) Mubarek Kareem, Social Services Coordinator for the Department of Human Services, (4) Ozzie Williams, the acting supervisor of the Center, (5) Phyllis Landrieu, the acting president of the Orleans Parish School Board, and (6) Daryl Kilbert, Superintendent of the New Orleans Public Schools.

Plaintiffs make a number of allegations regarding conditions at the Center. First, they allege that the staff of the Center are inadequately trained and that the staff fail to protect the youths from the threat of abuse by staff members and other youths. Plaintiffs contend that the youths are punished arbitrarily, that they are placed in isolation for grossly excessive periods of time, and that there is no procedure in place for determining when isolation is appropriate. Plaintiffs further allege that Defendants are indifferent to the mental health needs of the youths, that Defendants fail to assure adequate psychological assessment of the youths, and that Defendants do not employ a sufficient number of psychologists and social workers. Additionally, Plaintiffs allege that Defendants are indifferent to the medical care of the youths, that medication is not distributed as prescribed, that the youths are not fed nutritious meals, and that they are sometimes fed spoiled food. Plaintiffs contend that the toilets, showers, and sinks are not adequately cleaned, that cells are oppressively small and dark, and that the youths are not

provided adequate hygiene items.  Additionally, Plaintiffs argue that the youths are forced to wear dirty clothes and that the Center is infested with vermin and rodents.  Plaintiffs allege that Defendants do not provide appropriate education, that the Defendants fail to assess the youths to determine if they have special educational needs, and that Defendants fail to provide adequate rehabilitative treatment.  Plaintiffs allege that Defendants deny the youths access to the courts by maintaining a grievance procedure that is vague and by sometimes actually physically destroying grievances that are submitted.  Finally, Plaintiffs allege that Defendants deny them access to counsel by unreasonably limiting contact with attorneys.

Based on these claims, Plaintiffs allege the following causes of action:

1. That the conditions at the Center violate the youths' Due Process rights under the Fourteenth Amendment;
2. That the conditions at the Center constitute Cruel and Unusual Punishment under the Eighth Amendment;
3. That the process of arbitrary punishment at the Center violates the youths' Due Process rights under the Fourteenth Amendment;
4. That the refusal to protect the youths violates their rights under the Eighth and Fourteenth Amendments;
5. That Defendants' refusal to allow meaningful access to

       courts violates the youths' rights under the First, Sixth, Eighth, and Fourteenth Amendments;

6. That Defendants' indifference to Plaintiffs' mental health needs violates their rights under the Eighth and Fourteenth Amendments;

7. That Defendants' failure to provide adequate special education services violates the youths' rights under the Fourth and Eighth Amendments as well as the Rehabilitation Act, the Individuals with Disabilities Education Act, and the Americans with Disabilities Act;

8. That Defendants' failure to provide adequate mental care for youths with mental disabilities violates their rights under the Fourteenth and Eighth Amendments as well as the Rehabilitation Act and the Americans with Disabilities Act;

9. That Defendants' failure to provide adequate rehabilitation violates the youths' rights under the Eighth and Fourteenth Amendments.

Defendants C. Ray Nagin and Ozzie Williams have now moved to dismiss Plaintiffs' claims against them.

Defendants contend that dismissal is proper because Plaintiffs have failed to allege that they have exhausted their remedies under the Prison Litigation Reform Act.  Additionally, Defendants claim that Plaintiffs have failed to allege facts sufficient to support

claims under the Eighth and Fourteenth Amendments regarding the general conditions at the Center and the staff's failure to provide adequate medical care.  Further, Defendants claim that Plaintiffs have failed to allege facts sufficient to state a claim for denial of access to courts.  Defendants also argue that Plaintiffs have failed to support a claim for failure to train and supervise on the part of Defendants Nagin and Williams.  Finally, Defendants contend that Plaintiffs' claims under Section 504 of the Rehabilitation Act, under Title II of the Americans with Disabilities Act, and under the Individuals with Disabilities Education Act should be dismissed because Plaintiffs have stated no concrete allegations in support of these claims.

Plaintiffs contend that failure to exhaust under the Prison Litigation Reform Act is an affirmative defense and that it is Defendants' burden to raise such a defense.  Additionally, Plaintiffs contend that they have alleged facts related to the general conditions of confinement at the Center as well as failure of the staff to provide medical and mental healthcare which are sufficient to state a claim for unconstitutional "conditions of confinement" at the Center under *Bell v. Wolfish*, 441 U.S. 520 (1979). Plaintiffs contend that their allegation that the staff of the Center are actively interfering with the youths' attempts to file grievances is sufficient to support a claim for denial of access to courts.  Plaintiffs contend that despite Defendants'

conclusory statements to the contrary, they have alleged sufficient facts to establish claims under the Rehabilitation Act, under Title II of the Americans with Disabilities Act, and under the Individuals with Disabilities Education Act.  Finally, Plaintiffs contend that given Nagin and Williams' alleged actual participation in the unconstitutional acts enumerated in the Complaint, both Nagin and Williams are proper Defendants in this suit.

### *DISCUSSION*

### I.   Motion to Dismiss Standard

In considering a Rule 12(b)(6) motion to dismiss, courts have found that dismissal pursuant to this provision "is viewed with disfavor and is rarely granted."  *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true.  *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Until recently, the standard for a motion to dismiss was often phrased in such a way that a district court could not dismiss a complaint under Fed. R. Civ. Pro. 12(b)(6) "unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall*, 42 F.3d

6

925, 931 (5th Cir. 1995).  The Supreme Court, however, recently noted that the phrase "no set of facts" "is best forgotten as an incomplete, negative gloss on an accepted pleading standard..." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).  The Court went on to note that the standard, in reality, remains the same, that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*.  The Fifth Circuit defines this strict standard as, "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247, citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming v. United States*, 281 F.3d 158, 161-62 (5th Cir. 2001).

**II.  Exhaustion Requirement Under the Prison Litigation Reform Act**

Defendants allege that dismissal is proper because Plaintiffs have failed to allege that they have exhausted their remedies under the Prison Litigation Reform Act ["PLRA"].  The PLRA mandates early judicial screening of prisoner complaints and requires that prisoners exhaust prison grievance procedures before filing suit. *Jones v. Bock*, 127 S. Ct. 910, 914 (2007).  The Supreme Court

7

recently held in *Jones v. Bock* that failure to exhaust is an affirmative defense under the PLRA and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id*. at 921. Further, under Fifth Circuit law, an affirmative defense is properly raised in a motion to dismiss only if the affirmative defense appears clearly on the face of the pleadings. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *A2D Technologies, Inc. v. MJ Sys., Inc.*, 2008 WL 695251, *3 (5th Cir. 2008). Whether Plaintiffs in this case have exhausted their administrative remedies cannot be determined from the face of their Complaint. Thus, dismissal on these grounds is improper.

**III. Plaintiffs' Claims for Constitutional Violations Regarding the Conditions at the Center**

Defendants claim that Plaintiffs have failed to allege facts sufficient to support claims under the Eighth and Fourteenth Amendments regarding the general conditions at the Center and the staff's failure to provide adequate medical care.

The Plaintiffs in this case are youths that have been charged with crimes but have not yet gone to trial. Although Plaintiffs allege cruel and unusual punishment under the Eighth Amendment, the Supreme Court has held that pretrial detainees, like the Plaintiffs in this case, derive their rights from the Due Process guarantees of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). The standard for determining whether a pretrial

detainee has suffered a Due Process violation depends on whether the constitutional challenge is based on a "condition of confinement" or an "episodic act or omission." *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997).  A "conditions of confinement" claim challenges the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996).  An "episodic act or omission" challenge, on the other hand, focuses on a particular act or omission of one or more officials.  *Flores*, 124 F.3d at 738.

Although the Defendants characterize Plaintiffs' claims as episodic act challenges, Plaintiffs contend that they are challenging the conditions of confinement at the Center rather than particular isolated acts.  The Court agrees with the Plaintiffs' contention.  The Plaintiffs' Complaint alleges that the general rules and conditions in place at the Center violate the youths' rights. Specifically, Plaintiffs contend that the Defendants have "deliberately understaffed [the Center]" and that they have "completely mismanaged [the Center]."  Comp. ¶ 2.  Additionally, Plaintiffs allege that "[t]he totality of conditions and treatment amounts to an unsafe and constitutionally deficient environment that harms [the] children...." Comp. ¶ 29.  Plaintiffs allege that "Defendants subject youth[s] at [the Center] to a disciplinary system in which punishments are arbitrarily meted out" and that "Defendants do not have a procedure by which qualified

professionals determine the need for isolation or lockdown...." Comp. ¶ 35, 37.  Finally, Plaintiffs allege that Defendants' actions regarding mental health and medical care "demonstrate an official policy or custom that manifests a deliberate indifference" to the mental health and medical care needs of the youths.  Comp. ¶ 45, 50.  The Court finds that these allegations constitute a condition of confinement claim.

To determine whether a condition of confinement is unconstitutional under the Fourteenth Amendment, the Court must determine whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective."  *Bell*, 441 U.S. at 539.  If it is not related to a legitimate goal, that is, if it is arbitrary or purposeless, a court may infer that the purpose of the condition or restriction is punishment and that it is, therefore, unconstitutional.  *Id*.  Thus, in order for a pretrial detainee to allege a 42 U.S.C. § 1983 claim for a Fourteenth Amendment Due Process violation arising from the conditions of confinement, the detainee must plead facts that support the finding that he was subjected to jail conditions that were not reasonably related to a legitimate government objective.  *Shepherd v. Dallas County*, 2008 WL 656889, *4 (N.D. Tex. 2008).

In the present case, Defendants focus specifically on Plaintiffs' claims that the facilities are unsanitary and that the youths' medical health needs are not properly addressed.

Defendants claim that Plaintiffs have failed to allege facts sufficient to state a cause of action under Section 1983 regarding these conditions. The Court finds, however, that Plaintiffs have alleged numerous facts to support their conditions of confinement claim. Specifically, they state that the toilets, showers, and sinks are unsanitary, that the cells are small and dark with inadequate ventilation, that the youths are not provided adequate personal hygiene items, and that the Center is infested with vermin. Additionally, Plaintiffs allege that the youths are denied prompt medical care, that medications are not distributed as prescribed, and that there is no formal, on-going psychiatric care provided to youths in need of these services. Separate conditions of confinement may establish a constitutional violation "when each would not do so alone, but...when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need...." *Gates v. Cook,* 376 F.3d 323, 333 (5th Cir. 2004). Additionally, Defendants have failed to show how any of the conditions listed by the Plaintiffs are in any way related to a legitimate government objective. Thus, the Court finds that Plaintiffs have alleged a claim for unconstitutional conditions of confinement under Section 1983.

**IV. Plaintiffs' Claims for Denial of Access to Courts**

Defendants allege that Plaintiffs have failed to allege facts sufficient to state a claim for denial of access to courts. In

11

*Lewis v. Casey*, 518 U.S. 343, 348, (1996), the Supreme Court held that an inmate asserting an access to court claim must show that the actions of the defendants resulted in an actual injury, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Thus, an individual asserting an access to courts claim must at least allege some general factual allegations of injury resulting from the conduct of the defendants. *Brown v. Ridge*, 2006 WL 1581167, *12 (W.D. La. 2006).

In the present case, Plaintiffs allege that the grievance procedure is unconstitutionally vague and indefinite. Plaintiffs also allege, however, that grievances have actually been destroyed in the presence of the youths and that the youths have been told that their grievances will be ignored. These specific allegations sufficiently indicate injury resulting from Defendants' conduct. If grievances are destroyed or ignored, there is certainly a chance that youths are actually prejudiced in their ability to present a claim. Thus, the Court finds that Plaintiffs have alleged sufficient facts to support a claim for denial of access to courts.

**V.   Involvement of Defendants Nagin and Williams**

Defendants argue that Plaintiffs have failed to allege facts that support a claim for failure to train and supervise on the part of Defendants Nagin and Williams. As Plaintiffs point out, however, they have not alleged claims against these Defendants

based on the theory of vicarious liability. Instead, they have brought an action against the Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983. The claims against Defendants in their official capacities are essentially claims against the City of New Orleans, the entity of which they are agents. *Burge v. City of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). In order for a local governmental body to be held accountable for a constitutional violation, there must be (1) a policy maker, (2) an official policy, and (3) a violation of the constitutional rights whose moving force was the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The unconstitutional conduct must be directly attributable to the municipality through some sort of official action. *Id*. Additionally, there must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right. *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002).

In order to find the Defendants liable in their individual capacities, Plaintiffs must show (1) their personal involvement in the constitutional deprivation or (2) a sufficient causal connection between their wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Additionally, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory

13

officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation (citations omitted).'" *Id*.

With these standards in mind, the Court must address Plaintiffs' allegations against Defendants Nagin and Williams. Plaintiffs' Complaint states that C. Ray Nagin is the Mayor of the City of New Orleans and that the City "is responsible for the secure detention and constitutional treatment of children remanded to detention pending trial and children adjudicated delinquent and held pending placement with the Louisiana Office of Youth Development." Comp. ¶ 14. The Complaint states that Ozzie Williams is the Acting Supervisor of the Youth Study Center, that he "oversees daily operations and management of the youth[s] at [the Center]" and that it is his duty "to properly maintain [the Center] and care for its residents." *Id*. Additionally, it states that Williams is "responsible for the care, custody, security, and treatment of children remanded to detention by juvenile courts in Orleans Parish pending trial and children adjudicated delinquent and held pending placement with the Louisiana Office of Youth Development." *Id*. Plaintiffs allege further that "Defendants are aware of the unconstitutional conditions and the risks of irreparable harm to Plaintiffs" which are enumerated in the Complaint and that "[d]espite Defendants' knowledge, they are deliberately indifferent to those unconstitutional conditions and

14

the risk of irreparable harm." Comp. ¶ 87. Plaintiffs allege that "[t]he conditions of confinement at [the Center], and the policies, procedures, and practices established by the Defendants are not rationally related to a legitimate, non-punitive government purpose...." Comp. ¶ 88. Finally, Plaintiffs allege that "[a]s a proximate result of the policies, practices, acts, and omissions of Defendants, Plaintiffs have suffered and continue to suffer serious and irreparable...injuries." Comp. ¶ 86.

The Court finds that Plaintiffs have alleged sufficient facts to state a claim against Nagin and Williams in their official capacities. Plaintiffs have clearly alleged a policy on the part of the Mayor and the Director related to the procedures at the Center. Additionally, as noted above, Plaintiffs have sufficiently alleged certain Constitutional violations. Finally, Plaintiffs have alleged a direct causal link between the Defendants' policies and the unconstitutional violations enumerated in the Complaint.

The Court finds that the allegations are also sufficient to state a cause of action against Williams in his individual capacity. Plaintiffs allege that as the supervisor of the Center, Williams is responsible for the care of the youths, that he oversees the daily operations at the Center, and that he is aware of the unconstitutional conditions. The Court finds that there is sufficient causal connection between Williams' personal involvement, and specifically his conduct of overseeing the conditions at the

Center, and the deprivations alleged in the Complaint.

Finally, the Court finds that Plaintiffs' allegations are sufficient to state a claim against the Mayor in his individual capacity. The Complaint does not allege the same level of personal participation on the part of the Mayor as it does on the part of Defendant Williams. The Complaint, however, does allege a policy of unconstitutional confinement attributable to the Mayor. Additionally, it alleges that the Mayor has knowledge of the conditions at the Center. Although personal liability under Section 1983 depends on actual participation in the unconstitutional acts, "such participation can consist in formulating a policy pursuant to which subordinates deprive a person of his constitutional rights." *Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir. 1986). Plaintiffs' allegations are sufficient to state a valid claim against the Mayor in his individual capacity.

**V.    Plaintiffs' Claims Under the Americans with Disabilities Act, the Rehabilitation Act, and the Individuals with Disabilities Education Act.**

Defendants allege that Plaintiffs' claims under Section 504 of the Rehabilitation Act ["RA"], under Title II of the Americans with Disabilities Act ["ADA"], and under the Individuals with Disabilities Education Act ["IDEA"] should be dismissed because Plaintiffs have stated no concrete allegations in support of these claims.

16

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7). The phrase "services, programs, or activities" includes medical and educational prison programs. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Finally, the rights and procedures available under Section 504 of the RA are the same as those available under Title II of the ADA. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *Patterson v. Kerr County*, 2007 WL 2086671, *6 (W.D. Tex. 2007).

Plaintiffs have made numerous allegations regarding Defendants' failure to provide adequate special education as well as adequate psychological assessments of children with mental disabilities. These allegations include a failure of the staff to allow access to the Center to medical practitioners qualified to address mental health problems, failure to provide formal psychiatric care, and

17

denial of special education and related services. Other than the conclusory statement that Plaintiffs have not stated concrete allegations to support their claims, Defendants have pointed to no specific deficiencies in Plaintiffs' pleadings regarding their special education or mental disability claims. The Court finds that these allegations are sufficient to state claims under the ADA and RA.

The IDEA provides that states which receive federal education funding must provide each disabled child within its jurisdictional boundaries with a "free appropriate public education" tailored to his unique needs. *See* 20 U.S.C. § 1412(1). This is accomplished through the formulation of an "individual education program" ["IEP"] for each disabled child. An IEP is a written statement prepared with input from the child's parent, teachers, and a representative of the school district that addresses the child's particular needs. *See* 20 U.S.C. § 1414(d). Plaintiffs allege that Defendants have failed to provide the youths at the Center with free appropriate public education. Specifically, they allege that there is no screening in place at the Center to determine which youths are eligible for special education and that Defendants have failed to develop IEPs for the youths that require special education services. As in the case of the RA and ADA contentions, Defendants have failed to point out any specific deficiencies in these pleadings. Accordingly, the Court finds that Plaintiff have stated a valid

claim under IDEA.

Accordingly,

> **IT IS ORDERED** that Defendants' Motion to Dismiss is **DENIED.**

New Orleans, Louisiana this 19th day of June, 2008.

_____
UNITED STATES DISTRICT JUDGE