**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **J.D., L.E., AND R.A., MINORS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9755** |
| **C. RAY NAGIN, ET AL** | **SECTION B(4)** |

<u>**ORDER AND REASONS**</u>

On February 4, 2009, the Court held oral argument on Plaintiff's Motion for Class Certification. (Rec. Doc. 146). The motion is opposed. (Rec. Doc. 151). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion for Class Certification (Rec. Doc. 146) is **GRANTED.**

**BACKGROUND**

This is a civil action brought by minors J.D., L.E., and R.A., by and through their *Guardian Ad Litem,* Damekia Morgan, on behalf of themselves and others similarly situated. Named Plaintiffs are minors who were in custody at the Youth Study Center ("YSC") in New Orleans, Louisiana, and Plaintiffs seek class certification for all children who are now or in the future will be confined at YSC.[1] YSC is presently operating in a fifty year old facility that was

---

[1] The "now" in children who are now or in the future will be confined seems to apply to those children who were confined at the time the suit was filed, December 21, 2007. At least one of the named Plaintiffs, J.D. has since been released.

1

damaged after Hurricane Katrina and is awaiting demolition. (See Rec. Doc. 151 at 2). Defendants claim that there are plans to build a new facility. According to YSC officials, YSC holds a maximum of 20 boys and 12 girls. All the current juveniles under detention at YSC are African-American males. The population at YSC is constantly changing as youth are detained, committed, transferred, or released. In 2008, more than 400 children had been detained at the YSC. (See Affidavit of Dana Kaplan, Rec. Doc. 146-5).

Plaintiffs allege a variety of constitutional and state violations by those responsible for running the YSC and administering education and rehabilitation programs at the facility.[2] Plaintiffs assert civil rights violations under 42 U.S.C. § 1983 and allege that the children detained at YSC are being denied rights protected by the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also allege violation by Defendants of § 504 of the Rehabilitation Act, 29 U.S.C. § 794; Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12133; and various provisions of the Louisiana Constitution, Louisiana's

---

[2] Defendants include C. Ray Nagin, Mayor of the City of New Orleans; Richard Winder, Director of the City of New Orleans Department of Human Services; Mubarek Kareem, Social Services Coordinator of New Orleans Department of Human Services; Ozzie Williams, Acting Supervisor of YSC; Darryl Kilbert, Superintendent of New Orleans Public Schools; Phyllis Landrieu, President of Orleans Parish School Board; and Orleans Parish School Board.

Children Code, and other Louisiana law. Plaintiffs' allegations consist primarily of claims of poor confinement conditions; inadequate staffing, supervision, and training; arbitrary disciplinary procedures and improper use of isolation; failure to provide mental health care; inadequate medical care, nutrition, education, and rehabilitative programming; unreasonable barriers for family unification and community integration; and denial of meaningful access to court and counsel through YSC policies and procedures.

Poor confinement condition claims include allegations of poor ventilation, small, dark cells, unsanitary conditions, presence of spiders, rodents, and other vermin, and failure to provide youth with personal hygiene items and adequate clean clothing and shoes. Plaintiffs allege that Defendants have failed to protect the youth at YSC from the threat of violence and abuse by staff and other children and also contend that children are subject to shouting, cursing, and berating by staff members. (Compl. at ¶ 34, Rec. Doc. 1).

With respect to arbitrary disciplinary procedures, Plaintiffs assert that youths are isolated for grossly excessive periods of time (22-23 hours per day) and that no procedure exists by which qualified professionals determine the need and length of isolation or "lockdown." Plaintiffs further allege that isolation and "lockdown" are used for the convenience of staff and in some instances, in place of therapeutic programming. Plaintiffs further

allege that isolated children are not adequately monitored or provided adequate education, recreation, or counseling. Plaintiffs also assert that Defendants' continuing policies and practices have failed to ensure that prolonged use of isolation does not have adverse psychological consequences and have failed to exclude children with mental illness and other disorders from the prolonged use of isolation, which may constitute cruel and unusual punishment for such children. [3]

Plaintiffs claim that Defendants are "deliberately indifferent" to the mental health and medical needs of the youth. Plaintiffs allege that Defendants failed to assure adequate psychological assessments, denied access to medical practitioners, and failed to provide a psychiatrist to monitor medications. (Compl. at ¶¶ 41-44, Rec. Doc. 1). Plaintiffs further assert that youth at YSC are not provided prompt medical care and that staff do not distribute medications as prescribed and are ill-trained and unable to recognize or respond adequately to the children's medical needs. *Id*. at ¶¶ 46-49. Plaintiffs also claim that youth fail to receive a nutritionally adequate diet and are not regularly provided fresh fruit or vegetables. Plaintiffs assert that youth are given only one portion of milk a day and that the milk is

---

[3] See Rec. Doc. 1 at 9-11 for more specific allegations surrounding Plaintiffs' claims of arbitrary disciplinary procedures and improper use of isolation.

sometimes spoiled.[4]  *Id*. at ¶¶ 51-52.

Regarding Plaintiffs' claims of inadequate education and rehabilitative programming, Plaintiffs allege that Defendants do not provide youth with adequate and appropriate individualized academic education, including special needs determination and failure to develop and implement Individualized Education Programs ("IEP") for eligible children.  Plaintiffs assert overcrowded classrooms in violation of the state mandated student/teacher ratio and claim that all YSC youth receive the same education from a single teacher who is without access to prior education records. Other inadequate education claims include failure to ensure the state requirements regarding minimum minutes of daily instruction[5] and curriculum development standards.

Rehabilitative programming inadequacy claims include failure to provide adequate and individualized child and adolescent developmental treatment and counseling services, inadequate recreation, and insufficient transitional services and aftercare and follow-up programs.  Plaintiffs also allege that Defendants' continuing practices and policies place unreasonable and unnecessary burdens on youths' ability to maintain contact with their families by interfering with and restricting mail, telephone,

---

[4] Plaintiffs also claim that youth may be disciplined if they refuse to drink the spoiled milk.

[5] In addition to claims that the general population does not receive the minimum minutes of daily instruction, Plaintiffs also point out that students on "lockdown" simply fail to receive educational services.

and visitation. Finally, Plaintiffs claim that Defendants deny youth meaningful access to court and counsel and allege that Defendants' policies restrict the ability of children to communicate with attorneys by restricting attorney visitation time and providing only one room for legal visits.[6] Plaintiffs further assert YSC's grievance procedure, which requires exhaustion of administrative remedies as a prerequisite to suit, is unconstitutionally vague and indefinite. Plaintiffs claim that Defendants have refused to accept grievances when children attempt to submit them and that some grievances have been physically destroyed in the presence of the children. Youth have also allegedly been advised that grievances will be ignored. (Compl. at ¶¶ 78-84, Rec. Doc. 1).

Plaintiffs assert that Defendants are aware of the allegedly unconstitutional conditions and risks of irreparable harm to the children confined at YSC and contend that Defendants have and continue to act in violation of the law. Therefore, Plaintiffs seek declaratory judgment, injunctive relief, attorneys' fees, and other and further relief that the Court shall deem just and proper and move this Court for class certification under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The remainder of the proposed class consists of present and future children detained at YSC.

---

[6] Plaintiffs note that if this one room is being utilized for some other purpose, children may not visit with counsel.

6

Plaintiffs argue that this Court certify the proposed class because the case meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, specifically Rules 23(a) and (b)(2). They argue that the prerequisites of numerosity, commonality, typicality, and adequacy of representation have all been met. Citing *Jones v. Diamond*, 519 F. 2d 1090, 1097 (5th Cir. 1975), Plaintiffs assert that class action suits have been a traditional vehicle for challenging system-wide violations in prisons and detention facilities and argue that federal Courts in this and other judicial circuits have routinely authorized such cases to proceed as class actions on behalf of all prisoners confined in those institutions. *See e.g., Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 328 (3d Cir. 1987); *French v. Owens*, 777 F.2d 1250, 1251 (7th Cir. 1985); *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 986 (3d Cir. 1983). Plaintiffs argue that numerosity is satisfied because the rapid turnover and the inclusion of future detainees make joinder impracticable.

Plaintiffs assert that the commonality test is met when there is at least one issue, the resolution of which, will affect all or a significant number of the putative class members. *See Mullen*, 186 F.3d at 625 (*quoting Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)). Plaintiffs argue that commonality is satisfied in the present case because all class members are children detained at YSC who are subject to the same policies, practices, and conditions of confinement and that the legal issues

raised by each class member's challenge to YSC's policies, practices, and conditions are identical.

Plaintiffs argue that typicality is satisfied because the claims of both named and unnamed class members arise from the same practice or course of conduct and are based on the same legal theory and that relief sought by the named Plaintiffs and putative class members is the same. Similarly, Plaintiffs argue that adequacy of representation is also satisfied because the named Plaintiffs have the same claims and seek the same remedies as the class as a whole; therefore there is no conflict of interest between named Plaintiffs and other members of the class.

Plaintiffs also assert that the requirements of Rule 23(b)(2) are satisfied because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate injunctive relief and corresponding declaratory relief with respect to the class as a whole. Plaintiffs assert that Rule 23(b)(2) class actions are particularly common and appropriate in prison and jail lawsuits in which the issues involved are applicable in the same manner to each member of the class. Additionally, Plaintiffs argue that class certification "takes on heightened importance" in pre-adjudication detention contexts like YSC because of the likelihood of mootness because of the fluidity of the population, transfers, and release. (Rec. Doc. 146-2 at 15). *See also Gerstein v. Pugh*, 420 U.S. 103, 110 (1975); *Sosna v. Iowa*, 419 U.S.

393, 403 (1975); *Jones*, 519 F.2d at 1097-98; *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D. Pa. 1976)(granting motion to certify class brought by 17 juveniles on behalf of themselves and others similarly situated, challenging the conditions of confinement and treatment at the Youth Study Center).

Finally, Plaintiffs contend that the proposed class counsel, Juvenile Justice Project of Louisiana ("JJPL") and international private law firm Holland & Knight, LLP, will fairly and adequately protect the interests of the class and thus satisfy the requirements of Fed. R. Civ. P. 23(g).

Defendants argue that Plaintiffs have failed to meet the requirements of Rule 23. They assert that Plaintiffs have failed to establish numerosity, common character, typicality, or adequate representation. Further, Defendants claim that Plaintiffs have failed to establish that the class definition is logical and that the individual plaintiffs are indeed members of the class sought to be certified.

Among Defendants' strongest arguments is that the Plaintiffs' proposed class is not logical or definable. They submit that the entire YSC building is awaiting demolition, with 17 million dollars set aside to build a new, state of the art facility. Defendants highlight the problem with establishing a class which contains future youth who will be confined at YSC and argue that it is unfair to include in the same class youth who were confined at YSC

shortly after Hurricane Katrina with future residents who will be in a state of the art facility.

Defendants argue that Plaintiffs cannot show that they meet the requirement of numerosity. Defendants assert that Plaintiffs have not presented evidence of numerosity for each subclass but Defendants do not argue that subclasses are necessary for class certification.[7] Defendants also assert that counsel for Plaintiffs go through the YSC daily and so there is no reason to believe potential members would not be able to be reasonably identified and joined. Defendants further argue that there may not necessarily be numerosity because not every inmate who passes through YSC has complaints.

Defendants argue that Plaintiffs' claims do not have a common character with the proposed class. Defendants erroneously assert that under Rule 23(a)(2) and (3), the potential class members must have in common questions of both law and fact. Defendants argue that the impact of the conditions of confinement would have to be established individually due to the "wide variety of claims" and the "inherently different physical and mental characteristics of each detainee." (Rec. Doc. 151 at 12). Defendants assert that typicality is not satisfied because the class representatives have

---

[7] Defendants cite *In re Fema Trailer Formaldehyde Products Liability Litigation*, 2008 WL 5423488 (E.D. La. 2008), for support of their subclass argument. However, Defendants' argument on this issue is unclear and the facts of *In re Fema Trailer* differ significantly from the present case.

not together suffered the entire range of injuries alleged. Similarly, Defendants claim that named Plaintiffs are not adequate representatives of the proposed class because Plaintiffs' claims are neither common nor typical and "do not represent a cross-section of the claims of all purported class members."[8]

Finally, Defendants argue that Plaintiffs' claims satisfy neither the predominance nor superiority requirements under Rules 23(b)(1) and (b)(3). However, Plaintiffs' motion for class certification is asserted under Rule 23(b)(2), which Defendants do not directly address. The only argument that Defendants assert that may apply to Rule 23(b)(2) is that due to the differences among members, there is no pattern of action or regulatory set of practices that affects all of the members of the purported class. Defendants conclude their argument by urging the Court to consider the Uniform Class Actions Act and cite provisions from said Act that simply repeat statutory and case law provisions previously evaluated by both parties. Defendants neither specifically argue the Uniform Class Actions Act, assert how the Act would additionally influence the evaluation of the motion to certify class, nor cite cases for interpretation and application of the Act.

---

[8] Defendants reference Exhibit 1, a chart they produced categorizing the types of claims and the claims of detained children who have been deposed or were scheduled to be deposed.

**DISCUSSION**

<u>Mootness</u>

Consideration of class certification begins with an examination of mootness. The proposed class consists of all children who are now, or in the future, will be confined at the YSC. As noted by Defendants, the named Plaintiffs and several potential class members who have been deposed have been released from YSC. The Fifth Circuit, recognizing the Supreme Court's discussion of the issue in *Gerstein v. Pugh*, 420 U.S. 103 (1975), held that mootness is an illusory issue in class certification proceedings involving pretrial detention because it falls within the mootness exception of claims that are "capable of repetition, yet evad[e] review." *Jones v. Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975). In fact, the temporary nature of pretrial detention, in which a person could "suffer repeated deprivations" but be released before his claim was fully adjudicated, makes such cases suitable for class certification. *Id.* In such situations, "it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures" and "the constant existence of a class of persons suffering the deprivation is certain." *Id*. at 1097, 1098; *see also Santiago v. City of Philadelphia*, 72 F.R.D. 619, 623-24 (E.D. Pa 1976).

<u>Rule 23(a)</u>

In order for a case to be certified as a class action,

plaintiffs must satisfy the four prerequisites of Fed. R. Civ. P. 23(a) and one of the conditions of 23(b). Subsection 23(a) requires that class representatives demonstrate:

    (1)   the class is so numerous that joinder of all members is impracticable;
    (2)   there are questions of law or fact common to the class;
    (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)   the representative parties will fairly and adequately protect the interests of the class.

**Numerosity**

Rule 23(a)(1) allows a class action to be maintained if the class is so numerous that joinder of all members is impracticable. Rule 23's numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations. *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318 (1980). To satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members," and some courts have denied class certification in which the plaintiffs included fewer than 45 people. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). However, Courts have also held that relatively small amounts of plaintiffs can also satisfy the numerosity requirement and Courts in the Fifth Circuit have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement

and there is no set number above or below which a class is considered to have or have not satisfied the numerosity requirement. *See Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999). Furthermore, "Rule 23(a) must be read liberally in the context of civil rights suits," and "smaller classes are less objectionable where the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones*, 519 F.2d at 1099, 1100.

More important than estimated numbers is whether joinder of all the proposed members of the class is impracticable. The Fifth Circuit has found the inclusion of future members in the class definition a factor to consider in determining whether joinder is impracticable. In *Jack v. American Linen Supply Co.*, the Court noted that "[t]he alleged class ... include[d] unnamed, unknown future ... [members] who will be affected by ... discriminatory policies, and joinder of unknown individuals is certainly impracticable" and weighs in favor of certification. *See Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000).

As in *Jones v. Diamond*, the YSC class would contain the three named Plaintiffs who were confined at the facility at the time suit was filed, as well as all present youth confined at the facility and youth who may in the future be confined at YSC. Each year, hundreds of children are detained at YSC. In 2008, more than 400 children were detained at the Youth Study Center. (See Affidavit

14

of Dana Kaplan, Rec. Doc. 146-5).  However, at any one time, the facility can hold only around thirty youth.  The mere fact that the population of the YSC is constantly revolving during the pendency of litigation renders any joinder impractical. Moreover, individual litigation would impose a substantial burden on the plaintiffs, defendants, and the judicial system.

Defendants argue that there may not necessarily be numerosity because not every inmate who passes through YSC has complaints. They also assert that perhaps this Court should not consider the inclusion of future youth who will be confined at YSC because it is scheduled to move to a state of the art facility.  However, such an argument ignores the complaints of inadequate education -- failure to provide youth with adequate and appropriate individualized academic education or the alleged deliberate indifference to the medical needs of the youth caused in part by lack of staff.  A yet to be built state of the art facility will not address all of the alleged constitutional, federal law, and state law violations complained of by the proposed class.  The  mere fact that the proposed class contains future members illustrates that the plaintiff class is not easily identifiable, and obstacles exist that hamper joinder of all potential class members.  Thus, the numerosity requirement is satisfied.

**Commonality**

Rule 23(a)(2) allows a class action to be maintained if there

are questions of law or fact that are common to the class. A common question is one which, when answered as to one class member, is answered to all. Defendants erroneously assert that under Rule 23(a)(2) and (3), the potential class members must have in common questions of both law and fact and that there is no common character because "different members of the class were impacted differently." (Rec. Doc. 151 at 14-15). However, the test for commonality is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir. 1999); *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). The commonality requirement does not require that the class members' claims be identical, but only that they raise an issue subject to generalized proof such that a class action would be an efficient and economical mechanism for resolving them. As the Fifth Circuit held in *Walker v. Jim Dandy Co., 638 F.2d 1330, 1336 (5th Cir. 1981),* "[a]lthough there need not be identity of claims, there must be common elements of law or fact such that the class action would be an economical way of prosecuting and defending claims."

In the present case all class members are children detained at YSC. Despite Defendants' contentions, all are subject to the same policies, practices, and conditions of confinement just as the prisoners in *Jones v. Diamond* and the children in *Santiago v. City*

16

*of Philadelphia*. The violations of federal and state law constitute the factual core of each member's claim. The legal issues raised by each class member's challenge to YSC's practices, policies, and conditions are identical. The resolution of the problems complained of will affect all or a significant number of the class members. Thus commonality is satisfied.

**Typicality**

Rule 23(a)(3) allows a class action to be maintained if the claims or defenses of the representative parties are typical of the claims or defenses of the class. Like commonality, the test for typicality is not demanding, "focus[ing] on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn*, 118 F.3d at 426.

In the present case the legal theories advanced and relief sought by the named Plaintiffs and putative class members are the same. At the core of this suit are allegations that Defendants have violated Plaintiffs' First, Sixth, Eighth, and Fourteenth Amendment constitutional rights by the conditions of confinement, lack of medical or mental health care, and excessive use of isolation for the pretrial detainees. There are no fundamental factual differences between the circumstances of the named Plaintiffs and the other putative class members. Each member of the class is or will be detained at the YSC for some period of time

and will be subjected to the same conditions, rules, and policies.

Defendants argue that typicality cannot be met because "each and every day post-Katrina brings more improvements to the YSC facility and a brand new facility is in the works." (Rec. Doc. 151 at 16). Defendants submit that each Plaintiff and proposed class representative spawns individual issues related to injury and causation. However, some of the violations stem from excessive use of isolation and inadequate medical and mental health care. These circumstances described and the remedies sought are shared by all proposed class members. Structural improvements or even a new facility will not extinguish most, much less all, of the constitutional violations addressed in the complaint. Moreover, the typicality requirement focuses less on the relative strength of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims. *Jenkins v. Raymark Industries, Inc.* 782 F. 2d 468 (5th Cir. 1986). Therefore, the typicality requirement is met.

**Adequacy of Representation**

The last requirement of Rule 23(a) is that the representative party fairly and adequately protects the interests of the class. Fed. R. Civ. P. 23(a)(4). "The 'adequacy' requirement looks at both the class representatives and their counsel." *Jenkins*, 782 F.2d at 468. The adequate representation requirement for certification of class mandates inquiry into: (1) zeal and

competence of representative's counsel; and (2) willingness and ability of representative to take active role in and control litigation and to protect interests of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475. (5th Cir. 2001). Initial determination that representative would be an adequate representative of the class should be based on two criteria: first, representative must have common interests with the unnamed members of the class; and second, it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1975). For the adequacy requirement to be met, there must be no significant conflict of interest between the named plaintiffs and the absent class members.

In the present case there is no conflict of interest between named Plaintiffs and class members, and the representatives have common interests with the unnamed members. All claims of named and unnamed Plaintiffs rest upon the practices and policies at YSC as a whole, and as such apply to both named and unnamed class members alike. Additionally, the named Plaintiffs seek the same remedies, namely declaratory and injunctive relief, as the class as a whole. Hence, adequacy of representation is met.

Rule 23(b)(2)

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy one of three requirements of Rule 23(b). Plaintiffs

specifically assert their motion for class certification under Rule
23(b)(2), which states:

> (2)  the party opposing the class has acted or
>       refused to act on grounds that apply generally
>       to the class, so that final injunctive relief
>       or corresponding declaratory relief is
>       appropriate respecting the class as a whole;

This case is suitable for certification under 23(b)(2) because it
alleges that Defendants' policies and practices generally
applicable to class members have operated to injure them in
violation of federal and state law and thus would be appropriate
for injunctive and/or declaratory relief.

The language of 23(b)(2) "does not mandate that all members of
the (b)(2) class be aggrieved by or desire to challenge the
defendant's conduct," but requires "that the conduct or lack of it
which is subject to challenge be premised on a ground that is
applicable to the entire class." *Jones*, 519 F.2d at 1199-1100.
Rule 23(b)(2) class actions have been used to challenge conditions
in prison and jail lawsuits and has been recognized by the Fifth
Circuit as "an effective weapon for an across-the-board attack
against systematic abuse." *Id*.

A seminal suit in Louisiana premised on unconstitutional
prison conditions is *Hamilton v. Morial*, a 1969 class action
originally titled *Hamilton v. Schiro,* Civil Action No. 69-2443.
*Hamilton* was filed in the Eastern District of Louisiana and
challenged conditions in the New Orleans Parish Prison. The

plaintiff class expanded over the years to include prisoners in other facilities as new jails were built and other cases challenging prison conditions in the area arose. *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F. 3d 367, 368 (5th Cir. 1998); and *Hamilton v. Morial*, Civil Action No. 69-2443, Rec. Doc. 367 (granting class certification under Rule 23(a) and (b)(2) for all present and future inmates incarcerated in certain facilities within the Orleans Parish Prison System in *Robinson v. Phelps*, Civil Action No. 87-5867, a case consolidated with *Hamilton v. Morial* in that same order).

Similarly, class certification under Rule 23(b)(2) is an appropriate case management tool for cases involving juvenile detention centers. In *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 626 (E.D. Pa 1976), the court granted a motion to certify class in an action brought by seventeen juveniles on behalf of themselves and others similarly situated, challenging the conditions of confinement and mistreatment at a youth study center. The *Santiago* court held 23(b)(2) to be satisfied, finding that "plaintiffs' claims, pertaining to ... the overall conditions at YSC, the policies controlling the administration of educational services and treatment of residents . . . and the alleged restraints on individual liberties, sufficiently allege[d]" conduct that was "based on policies and practices applicable to the entire

class" and that "final injunctive and declaratory relief may be required to terminate these practices."

Defendants do not directly address Rule 23(b)(2) but choose instead to argue that Plaintiffs' claims satisfy neither the predominance nor superiority requirements under Rules 23(b)(1) and (b)(3). The only argument that Defendants assert that may be construed as applying to Rule 23(b)(2) is that due to the differences among members, there is no pattern of action or regulatory set of practices that affects all of the members of the purported class. This argument, however, is overcome by case law such as *Jones* and *Santiago* which are directly analogous to the present case and involve individuals who enter a detention facility with their own unique set of circumstances but are all subject to the conditions of the facility and the policies and practices used to manage the facility. As in both *Jones* and *Santiago*, Plaintiffs in the present case assert Defendants have acted and refused to act on grounds generally applicable to the class at YSC as a group through their policies and practices. Therefore, injunctive and declaratory relief with respect to the class may be appropriate and 23(b)(2) is met.

Rule 23(g)

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court must consider:

(i)   the work counsel has done in identifying or
              investigating potential claims in the action;
        (ii)  counsel's experience in handling class
              actions, other complex litigation, and the
              types of claims asserted in the action;
        (iii) counsel's knowledge of the applicable law; and
        (iv)  the resources that counsel will commit to
              representing the class.

Fed. R. Civ. P. 23(g).

    The proposed class counsel is a juvenile justice advocacy organization, Juvenile Justice of Louisiana ("JJPL"), and an international private law firm, Holland & Knight LLP. JJPL has received numerous awards in litigation and legislative initiatives. The Community Services Team at Holland and Knight provides legal representation to people and groups that otherwise could not afford it. The Holland and Knight attorneys working on this matter have extensive experience litigating issues of federal Constitutional law and civil rights. The proposed counsel have resources sufficient to represent the class seeks vigorous prosecution on behalf of the class.

    The Fifth Circuit stated in *Jones v. Diamond*, "Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions." *Jones*, 519 F.2d at 1097. In the present case involving a detention center for youth, all requirements of Rule 23(a) and one requirement of 23(b) are met. Additionally, proposed counsel for the class satisfy Rule 23(g). Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Class Certification (Rec. Doc. 146) is **GRANTED** and the class shall be described as all children who are now or in the future[9] will be confined at the Youth Study Center in New Orleans, Louisiana.

New Orleans, Louisiana, this 5th day of February, 2009.

_____
**UNITED STATES DISTRICT JUDGE**

---

[9] "Now or in the future" means all children detained at YSC on or after December 21, 2007, the date the complaint in this action was filed.