UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J.D, L.E., AND R.A., MINORS BY AND THROUGH THEIR GUARDIAN AD LITEM, DAMEKIA MORGAN | CIVIL ACTION |
| VERSUS | NO: 07-9755 |
| C. RAY NAGIN, ET AL. | SECTION: "B" (4) |

### ORDER

Before the Court is a **Motion for Sanctions and/or Contempt (R. Doc. 101)**, filed by the Defendants, the City of New Orleans, Mayor C. Ray Nagin, Ozzie Williams, Richard Winder, and Mubarek Kareem (collectively referred to as "the Defendants"), seeking an Order from this Court sanctioning the Plaintiff, Damekia Morgan, guardian ad litem on behalf of/and minors J.D., L.E., and R.A. (collectively referred to as "the Plaintiffs") for allegedly disobeying a Court Order by performing expert examinations at the Youth Study Center on August 18, 2008.

### I. Background

The Plaintiffs bring this action under 42 U.S.C. § 1983, *et seq.*, the United States Constitution, and various federal statutes on behalf of all children who currently are or will be confined at the Youth Study Center ("YSC") in New Orleans, Louisiana. (R. Doc. 1). The Plaintiffs challenge the alleged illegal conditions of confinement at YSC, which include: (1) grossly unsanitary conditions; (2) inadequate medical care; (3) cruel psychological and verbal harassment and abuse; (4) improper and excessive use of lockdown; (5) inadequate education; and (6) other unconscionable and illegal conditions of confinement. (R. Doc. 1).

The Plaintiffs contend that YSC is an adult-style punitive correctional institution built in 1959, which has been poorly managed, with worsening conditions after Hurricane Katrina. (R. Doc. 1). They argue that YSC is understaffed and that the limited remaining staff at YSC are incompetent and inadequately trained and supervised. (R. Doc. 1).

The Plaintiffs assert that they are denied basic needs and services at YSC, including meaningful access to the courts and counsel. (R. Doc. 1). They claim that they are subjected to substandard educational, medical, and mental services. (R. Doc. 1). The Plaintiffs also allege that they are placed in oppressively small and dark cells for at least 20 hours daily, forced to wear dirty and worn clothes, and reside in unsanitary quarters with vermin, spiders, and rodents. (R. Doc. 1).

Furthermore, the Plaintiffs allege that they are subjected to excessive restraints and that staff often does not intervene to prevent violence and physical altercations between children or to otherwise protect the children from harm. (R. Doc. 1). In fact, the Plaintiffs maintain that the YSC staff berate them and arbitrarily and maliciously punish them, using isolation or unduly harsh and oppressive tactics, including lockdown periods of 22 to 23 hours a day. (R. Doc. 1).

The Plaintiffs allege that YSC also fails to provide adequate medical care, a nutritionally adequate diet, and basic education. (R. Doc. 1). Particularly, they contend that YSC is deliberately indifferent to the serious mental needs of the youth, including children who are mentally retarded and developmentally disabled, and YSC fails to employ a sufficient number of psychiatric or psychological specialists to treat the youth. (R. Doc. 1). The Plaintiffs assert that YSC's educational curriculum fails to meet the state standards, and the classrooms are overcrowded, and have scarce educational materials. (R. Doc. 1). The Plaintiffs also argue that YSC is seriously lacking in adequate special education and rehabilitation programs, and also fails to have family unification and community re-integration programs. (R. Doc. 1).

On August 18, 2008, representatives for both parties and the undersigned magistrate judge attended a tour of the YSC at 1100 Milton Street, New Orleans, Louisiana. (R. Doc. 100). Also present were two experts for the Plaintiffs, Dr. Marty Beyer, a clinical psychologist, and Mr. James Balsamo, an environmental conditions expert. (R. Doc. 100; R. Doc. 111, Ex. B). During the tour, counsel for the Plaintiffs requested permission from the Court to conduct expert inspections of the facility. (R. Doc. 100). In an Order issued that same day, the Court denied the Plaintiffs' request on the grounds that the Plaintiffs neither afforded the Defendants adequate notice of their experts' proposed activities, nor provided the Defendants with an opportunity to respond. (R. Doc. 100). The undersigned concluded that the Plaintiffs failed to properly present the issue to the Court. (R. Doc. 100).

Thereafter, on August 21, 2008, the Defendants filed the instant motion, seeking an Order from this Court finding the Plaintiffs in contempt and/or imposing sanctions on the grounds that the Plaintiffs deliberately ignored this Court's aforementioned order by permitting their psychological expert to conduct interviews of the youth inmates. (R. Doc. 101-2. pp. 3, 5).[1] They argue that "there was never any mention whatsoever, nor was it ever agreed upon between the parties or the Court that experts would be allowed to perform examinations during the tour." (R. Doc 101-2, p. 3). Accordingly, they request that the Court: (1) strike the Plaintiffs' psychological expert, Dr. Marty Beyer, as a witness and prohibit the Plaintiffs from introducing any evidence obtained from the interviews; (2) issue an Order finding the Plaintiffs in contempt of Court based on this purported violation; (3) admonish the Plaintiffs and compel them to proceed in good faith; and (4) award

---

[1] The Defendants also submit that the Plaintiffs ignored earlier discovery requests in violation of this Court's order. (R. Doc. 101-2, p. 3). However, they informed the Court that they intend to address this conduct in a future motion. (R. Doc. 101-2, p. 4, n. 3).

3

attorneys' fees and costs associated with bringing this motion.

In response, the Plaintiffs contend that the Defendants' motion is both procedurally and substantively deficient and urge the Court to strike the motion for failure to comply with the Local Rules. (R. Doc. 111, p. 1). Alternatively, the Plaintiffs suggest that the Court deny the Defendants' motion with prejudice. (R. Doc. 111, p. 2). In support of their position, the Plaintiffs argue that: (1) the Court's August 18th Order was not a limitation on the Plaintiffs' right of access to counsel – a right firmly established by this Court's Local Rule 23.1D; (2) Plaintiffs provided fair notice to both the Defendants and the Court regarding the experts' presence at the YSC ; and (3) the Defendants must do more than broadly state, without any support, that the Plaintiffs have engaged in sanctionable conduct. (R. Doc. 111, pp. 5-9). Thus, they request that the Defendants' motion for sanctions and/or contempt be denied.

## II. Standard of Review

### A. Sanctions

Federal Rule of Civil Procedure ("Rule") 37 authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders. *Chilcutt v. U.S.,* 4 F.3d 1313, 1319-1320 (5th Cir. 1993). A "court's discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.*

Rule 37(b)(2)(A) provides that if a party fails to obey an order to provide discovery, the Court may: (1) direct that facts be established as the prevailing party claims; (2) prohibit the disobedient party from introducing information into evidence or supporting or opposing claims or defenses; (3) strike the pleadings; or (4) dismiss the action in whole or in part. FED. R. CIV. P. 37(b)(2)(A). Additionally, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless

4

the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C); *see also* FED. R. CIV. P. 37(d)(1)(A)(ii), (c)(1).

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970); *see also Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir.1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.") While "the Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . . there is no doubt" that a Court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in obstructive behavior. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993).

**B.**     **Contempt**

Pursuant to Federal Rule of Civil Procedure ("Rule") 37(b)(2)(A)(vii), a court may treat as contempt of court a party's failure to obey an order to provide or permit discovery. FED.R.CIV.P. 37(b)(2)(A)(vii). Specifically, Rule 37(b)(2)(A) provides:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated    facts be taken as established for purposes of the action, as the       prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing    designated claims or defenses, or from introducing designated     matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;

5

> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED.R.CIV.P. 37(b)(A).

Civil contempt vindicates the rights of aggrieved persons under valid court orders. *Louisiana Ed. Ass'n v. Richland Parish Sch. Bd.*, 421 F.Supp. 973, 975 (D.C. La. 1976). It is well-settled that a party seeking an order of civil contempt must establish by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court's order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). A party commits contempt by violating a definite and specific order of the court which requires him or her to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Id.* (internal citations omitted).

"A civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987). However, civil contempt can serve two different purposes: (1) it can enforce, through coerciveness, compliance with a court's order; or (2) it can be used to compensate a party who has suffered unnecessary injuries or costs because of the contemptuous conduct. *Petroleos Mexicanos*, 826 F.2d 392, 400 (5th Cir. 1987). Nonetheless, the court may exercise its power with discretion, and some courts have held that the power should be used sparingly. *Richland Parish*, 421 F.Supp. at 975.

## III. Analysis

The Defendants urge the Court to sanction the Plaintiffs or, alternatively, to hold them in contempt, because the Plaintiffs' psychological expert allegedly proceeded to interview inmates at the YSC in direct defiance of the August 18, 2008 Order. (R. Doc. 101-2, p. 5). They also assert that "it was abundantly clear to all who were present at the tour of the YSC that the experts were not allowed to perform any inspections or conduct any testing." (R. Doc. 101-2, p. 5).

The Plaintiffs contend that they engaged in a "traditional legal visit" during which "designative representatives" spoke with the youth about "their legal concerns." (R. Doc. 111, p. 5). They insist that "no additional testing or observations were conducted." (R. Doc. 111, p. 5). Refuting the Defendants' core allegation regarding the Plaintiffs' alleged defiant behavior, the Plaintiffs maintain that they followed proper procedures for legal visits with youth. (R. Doc. 111, pp. 5, 9). Specifically, they allege that "no youth housed at YSC were visited by Plaintiffs' expert who had not formally requested representation in the manner outlined in Judge Lemelle's March 5, 2008 Order." (R. Doc. 111, p. 9).

The Plaintiffs also emphasize that they contacted the Defendants' counsel beforehand as a courtesy, outlining various instances between May 23, 2008 and August 15, 2008 where they advised the Plaintiffs and the Court that an expert would be present during the August 18th tour. (R. Doc. 111, pp. 6-7. *See also* R. Doc. 111, pp. 13-47, Exs. A-C). Ultimately, the Plaintiffs assert that they abided by the Court's express ruling and insist that the Plaintiffs' litigation team, including the experts, merely visited their clients after the tour. (R. Doc. 111, p. 8). The Plaintiffs therefore contend that the Defendants' motion is frivolous, misstates facts, ignores the law, and mischaracterizes both the Plaintiff's actions and the Court's August 18th Order. (R. Doc. 111, p. 3).

In the Fifth Circuit, various options are available where a party fails to comply with a court

7

order.  For example, a judgment by default for violation of a discovery order is appropriate if: (1) the refusal to comply results from bad faith or willfulness and is accompanied by delay or contumacious conduct; and (2) a less drastic sanction would not achieve the same result.  *See Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998).  Likewise, a decision to strike a party's pleadings generally arises where the party's conduct amounts to a flagrant, callous disregard for its responsibilities.  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990).  However, a fine for civil contempt may be appropriate to compensate petitioner for actual damages shown or to compel contemnor to comply with court order.  *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 583 F.Supp. 115, 122 (D.C. La. 1984).

The critical issue here is whether Dr. Beyer asked any questions and/or participated in any manner beyond observation during the "visit."  The level of Dr. Beyer's participation in the visit bears directly upon: (1) whether the Plaintiffs' conduct rises to the level of "willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence" required in order to issue sanctions;  and (2) whether the Plaintiffs acted contrary to the "specific and definite" instructions set forth in the August 18th Order, so as to justify an order of civil contempt.  *See Dorsey*, 423 F.2d 858, 860;  *In re Baum*, 606 F.2d 592, 593.

During the hearing, the Court inquired about the nature of Dr. Beyer's participation in the visit.  Wesley Ware, the youth advocate, took the stand and testified that Dr. Beyer was merely present during Plaintiff counsel's "legal visits" with Plaintiffs and/or other confined youth that formally requested the meeting.

In light of the foregoing, the Court determines, in its discretion, that sanctions are not warranted under the circumstances.  Furthermore, this case did not involve multiple violations of Court orders or "abusive discovery tactics" like those typically in cases where an Order of contempt

is deemed fitting. *See, e.g., McLeod*, 894 F.2d at 1486. However, at the very least, the Court admonishes the Plaintiffs for their seeming attempts to circumvent the ruling of the undersigned by conducting a psychological inspection under the guise of a "legal visit." Counsel is forewarned; efforts to play "fast and loose" with the rules cannot and will not be countenanced by this Court.

The Court also notes that the Plaintiffs set forth three arguments in support of their position: (1) the Court's August 18th Order was not a limitation on the Plaintiffs' right of access to counsel – a right firmly established by this Court's Local Rule 23.1D; (2) Plaintiffs provided fair notice to both the Defendants and the Court regarding the experts' presence at the YSC ; and (3) the Defendants must do more than broadly state, without any support, that the Plaintiffs have engaged in sanctionable conduct. (R. Doc. 111, pp. 5-9). In rendering its opinion above, the Court addressed the Plaintiff's third argument. However, the Court will briefly address the two remaining arguments below.

### A.   Right of Access To Counsel

The Plaintiffs first argue that their visits were permissible, because the Court's August 18th Order was not a limitation on their right of access to counsel as provided by Local Rule 23.1D. (R. Doc. 111, p. 5). They assert that Local Rule 23.1D requires the Defendants to apply in writing for an order prohibiting communications between the Plaintiffs and Plaintiffs' counsel and/or *designated representatives*. (R. Doc. 111, p. 3) (emphasis added). They claim that the Defendants failed to comply with the Rule, because they did not follow this procedure. (R. Doc. 111, p. 3). The Plaintiffs maintain that they, unlike the Defendants, acted within the scope of Judge Lemelle's order regarding visitation at YSC by following proper procedures for legal visits with youth. (R. Doc. 111, pp. 5, 9).

Judge Lemelle's March 4, 2008 Order expressly states "under the Supreme Court's reasoning

in *Gulf Oil* as well as the requirements set forth in Local Rule 23(D), this Court cannot prohibit Plaintiffs' counsels' access to putative class members . . . without a clearer record warranting such relief." (R. Doc. 51, pp. 5-6) (referencing *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)). This Order was issued after the Plaintiffs filed an Emergency Motion for an Order Prohibiting Obstruction of Access to Counsel (R. Doc. 20).

In the Emergency Motion, the Plaintiffs alleged that the Defendants "denied all *attorneys* representing the Plaintiffs as well as *paralegals* working with them" access to the children at the YSC." (R. Doc. 51, p. 2. *See also* R. Doc. 20) (emphasis added). They conceded that the Defendants eventually permitted communication between Plaintiffs' counsel and named Plaintiffs or other confined youths who requested meeting with counsel. (R. Doc. 51, p. 2. *See also* R. Doc. 20). However, the Plaintiffs maintained that the Defendants violated local rules and Supreme Court precedent "by prohibiting communication between Plaintiff's *counsel* and putative class member without a court order. (R. Doc. 51, p. 3) (emphasis added).

Essentially, the question is whether Local Rule 23.1D contemplates the presence of counsel *and its representatives* during communication with a potential or actual class member. Local Rule 23.1D explicitly provides:

> Whenever a party or counsel desires to prohibit *another party or counsel* from communicating concerning such action with any potential or actual class member not a formal party to the action, he or she shall apply in writing to the court for such an order. In such application, the parties must set forth with particularity the abuses they fear will result from such communication, along with the form of remedy they believe would be appropriate to prevent frustration of the policies
> L.R. 23.1D. (emphasis added).

The Court notes that there is no mention of the word "representatives" in Judge Lemelle's Order or in the Plaintiff's earlier Motion. (R. Doc. 51; R. Doc. 20). Furthermore, Rule 23.1D only references parties and attorneys, not their representatives. *See* L.R. 23.1D. Thus, while the

10

Plaintiffs correctly note that the Defendants were required to comply with Rule 21.3D, the Court finds that the Rule does not, as the Plaintiffs assert, contemplate the presence of "representatives" such as experts.

The Court also finds that the Plaintiffs actions exceeded the scope of Judge Lemelle's Order. The Court notes that Judge Lemelle's Order involved a different factual circumstance. The Order was issued to halt the Defendants' efforts to preclude Plaintiffs' counsel from meeting with the Plaintiffs. (*See generally* R. Doc. 51). This case centers around whether an *expert* is guaranteed access to the Plaintiffs absent an objection from the Defendants. In light of the aforementioned factual distinction, the Court is of the opinion that the Plaintiffs' interpretation of Judge Lemelle's ruling regarding the right of access is overly expansive. Having made this determination, the Court reiterates its admonishment as set forth above.

### B.     Fair Notice of Experts' Presence

The Court next addresses the issue of whether fair notice was given regarding the presence of experts at the tour. The Defendants argue that "there was never any mention whatsoever, nor was it ever agreed upon between the parties or the Court that experts would be allowed to perform examinations during the tour." (R. Doc 101-2, p. 3)

The Plaintiffs, on the other hand, assert that they provided fair notice to both the Defendants and the Court regarding the experts' presence at the YSC. They point to various instances between May 23, 2008 and August 15, 2008, where they advised the Plaintiffs and the Court that an expert would be present during the August 18th tour. (R. Doc. 111, pp. 6-7. *See also* R. Doc. 111, pp. 13-47, Exs. A-C).

The Court acknowledges that the Plaintiffs did, in fact, indicate that one of their experts, Marty Beyer, would be flying in from out of town and that she would be present during the YSC tour

during the oral hearing on July 23, 2008.[2]  (FTR Audio Files, Hr'g Before J. Roby, July 23, 2008). The Court agrees, however, with the Defendant's argument that Plaintiffs' counsel made no mention of their proposed experts' intentions to conduct on-site inspections or testing.

Based on this fact alone, the Court issued its August 18th Order expressly denying the Plaintiffs' request that their experts be permitted to concurrently inspect or test the facility during the tour. (R. Doc. 100, p. 2).  Ultimately, the Court concludes that there was fair notice regarding the <u>presence</u> of Dr. Beyer only.  The Court, however, reiterates its earlier ruling; there was not fair notice as to the experts' intention to conduct inspections and/or testing on-site.

## IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion for Sanctions and/or Contempt (R. Doc. 101)** be hereby **DENIED.**  The Court, however, admonishes Plaintiffs' counsel to refrain from any future attempts to circumvent rulings of the undersigned.

New Orleans, Louisiana, this <u>11th</u> day of February 2009

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The Court notes that no discussion regarding the presence of James Balsamo, the environmental conditions expert, took place during the hearing.